Good morning, Your Honors. My name is John Hermina. I'm here on behalf of the government of Egypt. I would ask that Your Honors permit me five minutes for rebuttal. Keep your eye on the clock in front of you, and you'll have whatever time is left. Thank you, Your Honor. Your Honor, we're here to respectfully request that the Court reverse at least the finding that relates to the $200,000. The finding was made erroneously. It was made without evidentiary support. It was made contrary to the plan, and it was made without affording Egypt an opportunity to be heard. Well, there was an opportunity. Well, Your Honor, even... You know, it was an opportunity that everybody else gets to be heard. Well, we've argued that Egypt deserves special consideration under Section 19, excuse me, 1608 of the Foreign Sovereign Immunities Act. Well, maybe that's the case, but it's not correct to say there was no opportunity to be heard. Well, on the damages... You were, in fact, heard, but it's not for lack of opportunity. We were not heard on the damages, Your Honor. I think the Court is correct in stating that Egypt defaulted. It did default. The answer was stricken, and we were not heard on the damages. We asked for an opportunity to be heard on the damages. What do you think is the proper measure of damages? The proper measure of damages is the — what is contained in the ERISA plan. In this case, the plan — there's language all over the plan that speaks to incurred expenses and those expenses that were charged, and I'm going to give Your Honor's specifics. First of all, the complaint, which was never amended, by the way, the complaint was drafted in the lifetime of the appellee. Counsel, I'm so sorry, but I often have trouble in this courtroom with the acoustics, and it's not a volume issue. If you could speak a little more slowly, I just don't want to miss anything you have to say. Thank you, Your Honor. And maybe put the mic a little closer to your mouth. It's just hard up here. Pull it down a little bit. Thank you. I apologize, Your Honor. With respect to — I'm just trying to cover ground in my — Sure. With respect to the complaint, which was, by the way, never amended, the complaint was drafted and filed in the lifetime of the appellee. The complaint refers only, if Your Honors were to look at record extract page number 421, refers only in the venue section to incurred expenses. It states, and I quote, plaintiff incurred expenses within the Eastern District. So if the Court were to look at the actual plan language, the Court would find that to answer Your Honor's question, page 333, which, by the way, was contained in the response to objections by counsel at page 85 in the record extract, the same language is quoted. At page 33, it says, termination of your insurance shall not affect payment of benefits for any covered expenses which was incurred prior thereto. And they're referring to the event of termination. So the word incurred is specifically used. And if we go on to page — record extract page number 364 in the definitions section of the plan, again, to answer Your Honor's question as to the measure, where do we ascertain the damages? Your Honors will notice that under, quote, covered expenses, again, on page 364, it says those expenses charged by a covered provider and medically necessary for the treatment of illness or injury. If Your Honors would then go to page 371, again, record extract page 371, Your Honors will note that under medical care decision, it says the benefits under the plan provide solely for the payment of certain health care expenses. Okay. That brings me back to my question. So it appears that the $200,000 that was awarded was the maximum payable under this, and it probably was measured against, for example, the cost, the estimated cost, of the liver transplant, which never took place. So what do you think they're entitled to? You've lost the case. So I want you to assume that you're losing the case, okay? And now the only question now is what are the appropriate damages? So from your perspective, what are the damages? The damages are out-of-pocket losses. And what would that be? $41,500. $41,500 plus the attorney's fees? Attorney's fees would have to be adjusted. Why out-of-pocket losses? Because the plan is very specific that the amounts to be paid aren't, this is not a top-hat benefit plan. This is not. But we have to assume that the liver transplant should have been paid. The liver transplant should have been paid for, right? Well, again, we were never given the opportunity to. We're talking about a page, and this is record extract page number 279. We're talking about the sole evidence we have here is a line in the declaration. If Your Honors were to look at the record extract page 376, a single line in the declaration says, saying, look at the exhibit number E, which is record extract number 279. And if you go there, if Your Honors were to go there, you'll find that it's a redacted document. It's addressed to no one. It is a document that contains hearsay, and it makes no reference to the deceased. It makes no reference to the deceased. Are you still answering my question? I'm sorry, sir. I'm waiting for an answer to my question. I beg Your Honor's pardon. Are you still trying to answer my question? I've been listening. Your Honor. You forgot the question. I apologize. You got so wrapped up in what you were saying, you forgot the question. The question is, they should have paid for the liver transplant, right? Not if a liver transplant was not available, Your Honor, respectfully. We don't know if a liver was available. We don't know that. We don't know. This is all pure speculation on the part of the Court, if I may respectfully say. No, I'm not. I'm asking the question whether they should have paid for it. The question whether it's available, whether it could have been arranged and all that are secondary questions. They owe the money for the transplant. I mean, the transfer was prescribed, and they said we're not paying for it. And they should have said, yes, we'll pay for it, assuming we can arrange it and it's available and so on, right? No doubt about it. They should have said the yes was standing here ready to pay for the transplant. Provided all of the other evidentiary issues are resolved. I want a yes out of you before you give me the conditions. Yes, sir. Huh? Yes, sir. Okay. So why isn't that the end of the case? I mean, you know, the other things, you know, you're here after a default. You admit you should have paid the money or should have made the money available. The guy loses his life over the fact that your client doesn't pay for the transplant. Why don't all the inferences run against you? And why isn't the district court entitled, after you've defaulted, to say we're going to treat the amount payable as if it had actually been paid? Because there were no, first of all, the plan language governs the activity and the interaction between the parties. They had to be a charged item. We don't know. It's all speculative. Number two. I'm sorry. So your position is by refusing to do what the plan requires you to do, you can get out of paying for it? No. And he dies as a consequence. That's too bad. Well, no, we're not saying it's too bad, Your Honor. Deaths are very important. It sort of sounds like it. No, Your Honor. What we're saying is ---- I would have thought he would have apologetically paid the money and said, whoops. Well, we have ---- We feel terrible about having deprived him of a liver when he could have saved his life. Your Honor, if I may, on page 181 of the record extract, we show that we had a meritorious defense. Now, sometimes the liability overlaps with damages. Counselor, is 181 the ---- Your Honor's record. Is that the hospital record regarding the preexisting condition? Right. Okay. So what about the translated record that shows that that record may have been forged? Your Honor, if they give us an opportunity in the district court to have a hearing on damages ---- Your repeated refrain about not having an opportunity is really hard for me, given this record, the number of times that there was an opportunity and your client was, in fact, participating in the litigation, except when your client chose not to participate in the litigation or not to show up at a status conference. So take your best shot at how it is that you've been denied an opportunity or your client was denied an opportunity, please. We think under practical concepts, Judge Ginsburg's, with the quoted language from there, and in the Ninth Circuit, there's a case called Gregion and it's ---- I'm sorry, Gregarion. I apologize. And it's at 871-F2-1515. There is language to the effect that foreign sovereigns should be afforded deference because they view themselves as immune. And right or wrong, they ---- we ought to give them opportunities. But you know that that's wrong because you've already been here twice. The Ninth Circuit is a ---- your clients lost, actually both of them lost on that issue, right, on the Foreign Sovereign Immunities Act issue? Yes, Your Honor. Yes. I mean, so you've known for some time that that was a losing argument. Well, I think damages, Your Honor, are not the same as liability. But what I heard you arguing here was that you want to go back and introduce the hospital records to show that you're not liable at all. No. My premise is I think that you're ---- I think that liability is now established. The only question is what's the appropriate measure of damage. Correct. And your position is that the plan is limited to or the damages should have been limited to what was actually incurred. Is that right? Yes. The parties are free to contract.  And why did the attorneys' fees get adjusted? Because if your honors were to remand a case and the $200,000 is removed and be heard on it, then the attorneys' fees will be adjusted and the interest will be adjusted. I'm sorry. Why would it be adjusted? Because the award of the attorneys' fees contemplates a greater amount. If the $200,000 was to be removed ---- Was the attorneys' fees tied to the amount of the award? We believe that there is some adjustment that should be made if the ---- But isn't the answer to that question, no, the attorneys' fees was not ---- It's not a function of the award amount, is it? No. It's a function of the ---- I believe one of the factors, and I apologize if I'm incorrect, but I believe one of the factors to be considered in awarding attorneys' fees is what was achieved in the underlying case. If you go back and want to argue about damages, I mean, you've already ---- I've already told you, at least I think you've gathered from my position, you've lost. The only question is now are the damages. You're only going to incur more attorneys' fees, right? The attorneys' fees are $41,000. The other side is just going to spend more time working on the case, and you're going to be liable for all of that. $41,500, I believe, is the amount that's proven. That may be the damage amount, but that's not going to be the attorneys' fees award. Certainly, Your Honor. I agree with that. I agree with that. I agree with that, sir. I apologize. Thank you, Your Honors, for the opportunity. Thank you. Thank you. Good morning. My name is Randy Andrus. I'm appearing for the appellee, Muhammad Lasheen. The story is about the Lasheen family and their loss. I want to address this particular topic that came up about whether or not the district court heard all the arguments, and they exercised their discretion, and they found under the plan and all the evidence that the ERISA plan existed. Egypt, in other words, committed themselves to an ERISA plan. And the purpose of that plan is to provide compensation to somebody that is In this particular case, the Lasheen family put their trust in this plan, and they were betrayed that trust. Counsel, could you go to the question, what is your best response to opposing counsel's argument that the language of the plan is limited to he's arguing essentially medical expenses actually incurred? What is your response, please? They denied those. They betrayed the Lasheen family and interrupted and cut those off so that they couldn't be incurred. Apparently they had been approved at one point by Egypt, and then they basically interfered with that right and they denied the benefits. So it should have been incurred. It should have been incurred. It was, for all intent and purposes, incurred. And I don't think that the language, and I'd have to study, you know, go back to their references, but my understanding of the plan and the district court looked at all of this and said, no, these expenses were incurred or would have incurred had you not denied the benefits. And that's specifically the purpose of the ERISA statute. That sounds like either compensatory damages for you or punitive damages against them. Well, neither. It's the benefits that he had under the plan. An employer can't just say, hey, you've got benefits under the plan. You're going to incur these expenses. We're going to deny you to even incur these expenses and then, therefore, say you're not entitled to the benefits under the plan. That doesn't make common sense. It strikes me under that reading of a plan, any time there's a very catastrophic medical expense, it would always, just in terms of dollars and cents, the plan's always going to come out ahead by making sure those expenses aren't incurred. That surely can't be. That's a very perverse reading, it strikes me. Is there case law on this where there's a large transplant expense like this? I haven't seen a large transplant expense like this, but just common sense would dictate that the benefits under the plan, that's the thrust of the ERISA statute. You're entitled to the benefits under the plan, and the employer is not to deny those benefits. What's the best evidence that the district court thought through this question? Let's see. There are findings, in fact, findings and conclusions. I believe that's on record number 14. 11, entitled to default judgment. They went through the benefits of the plan, so page 14 on to 16. Can you tell me, I don't have that numbered here. I'm looking at the district court's opinion. What number of the district court's opinion is it? What's the page number on the district court's opinion? It appears to be 10, 11, 10, 8, 9, 10, 11, and so forth on there. Those are just facts as to what, you know, about whether the cap was $100,000 or $200,000, how much the liver cost, the liver transplant was going to cost and so on. Is there any evidence here that the district court actually thought through the question as to what somebody is entitled to under ERISA? I believe it is contained in their findings here, yes. Have you got a page and a line number for me? Entitled to default judgment 10, line where it starts talking about 29 USC, 1132A, 1B. It seems at the bottom of 10 it says that plaintiff was entitled to plan benefits. He incurred the $41,500. He had the benefit of $200,000. So certainly a recognition it hadn't all been incurred. And had it been approved, there would have been the expenses of over $250,000. But they were wrongfully denied. That seems to be the extent of it. Am I missing something? No. I think that's where they indicate that he was, and then they go through the $100,000, And we set forth a rather extensive grid in our briefing to the Court on record number 134 where we talk about the difference between the student and the teacher and those factors. And then as the Court points out in what Your Honor just read, that they do establish that they had been and approved surgical expenses of over $250,000. In other words, on record page 186, it appears that the medical committee for the university had approved the request regarding the surgery operation. So they had been approved. Was there a liver available? Well, apparently according to the doctor's records and letters, they were in the transplant area, and all they needed was the go-ahead from the financial. That was the only thing that they needed. Was a liver available? I gather that Egypt's position is that he should have just incurred the expense, had the surgery, paid for it, and then sued to recover. That's the remedy provided for under the plan. What's your answer to that argument? Well, that would be kind of unfair. That would be to put that kind of a burden, a quarter million dollars on a person under those circumstances. Is there any evidence that he couldn't afford it, didn't have the money, couldn't have come up with it? I mean, I'm just wondering. I mean, what if the expense had been not a quarter of a million dollars, but $10,000? You know, some have found that's substantial but not unaffordable. Can somebody say, I'll just do without it, suffer the consequences, and then sue for the expense that wasn't incurred because you denied it? I mean, this is really sort of changing the nature of the ERISA plan in a substantial way. Was there showing that he couldn't afford the quarter million? Apparently, yes. I think he couldn't afford $41,500 even. Apparently, that didn't get paid either. Well, sometimes things don't get paid because people don't want to pay them. Sometimes that's true. Is there evidence not being able to afford it? I mean, we are messing with the remedies of the plan here. I mean, it may be perfectly justifiable to do it. And that's where I guess the court would have to say is, if you're entitled to a benefit, you have a choice to incur the benefit and sue for compensation, or you can choose to forego the benefit and sue for what they would have paid. And I don't think the statute or the statute contemplates that, nor the plan does. And I think it contemplates that you can just not incur it and then just, you know, have that kind of an election. You have that plan benefit, lifetime benefit, and if you interfere with that benefit, you're running afoul of the ERISA statute. And in this case, the court did not abuse its discretion in finding that those benefits were allowed. And part of the difficulty here, and the district court found prejudice with, is that I have to speak as the voice of a dead man now. Mr. Lesheen is not with us. Because of that, it's simply unfair to put that kind of a burden on him when the ERISA statute that Egypt committed to says that if you're denied benefits, not if you have to incur them and then submit a bill and so forth, but you're denied the benefits under the plan. They disputed whether it's $100,000 or $200,000 or all over the map. But in this case, they've been denied benefits. And because of that, our position is that the district court did not abuse its discretion. Egypt had the opportunity. They chose to not follow up on that opportunity. And we're left with severe prejudice. And so our request today is that the court affirm. You don't have to ask for consequential damages. Consequential damages may not be recoverable under ERISA. Under ERISA. That's a limitation. Counsel, I just have a quick question. I'm looking at ER. Well, that's a good question. What am I looking at? There's six numbers on this document. I think it's a 77. It's a letter dated May 1, 2000, from UC Davis Medical Center. And it says at the bottom, upon admission for the transplant procedure, we will require prepayment of half the case rate, $125,000, and that the balance has to be paid within 90 days of discharge. Other than this record, was there any other? And there's a considerable correspondence in this case. I just want to make sure I haven't missed anything else about, you know, the approval and what it was going to require up front to get the transplant. Is there any other correspondence about payment? Not other than what's in the record that I'm aware of. But I'm looking at page 71. Maybe I'm looking at the wrong. 79. 79. It's ER 279. Apparently I'm looking at the wrong set of numbers here. There are many numbers. Forgive me. But as far as you know, that's the ‑‑ is that the most specific record? I think there's another letter from Dr. Rosario that also is similar to that. Okay. Yeah. 279. That record is very telling, and that came from the files of the Egypt and their plant administrator. It's substantiated by a date of May 1st, 2000, which kind of puts it in the same timeframe that we're talking about all of this. The claimant died in December of 2000, I think. Is that right? No, December of 2000, yes. Right. Okay. Thank you. Okay. Thank you very much. Okay. I think you're out of time. Mr. Rosario will stand for a minute.
judges: Kozinski, Bybee, Christen